```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
                                                                   :
F.TV Ltd. and FASHION TV                                           :
PROGRAMMGESELLSCHAFT MbH,                                          :
                                                                   :
                           Plaintiffs,                             :
                                                                   :
              -v-                                                  :   14-cv-9856 (KBF)
                                                                   :
BELL MEDIA INC., as successor-in-interest to                       :   OPINION & ORDER
CHUM LIMITED, and BIGFOOT                                          :
ENTERTAINMENT, INC. d/b/a FASHION                                  :
TELEVISION INTERNATIONAL, LTD.                                     :
                                                                   :
                           Defendants.                             :
                                                                   :
------------------------------------------------------------------ X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 14, 2015

KATHERINE B. FORREST, District Judge:

On December 12, 2014, F. Tv Ltd. and Fashion TV Programmgesellschaft MbH (together, "FTV") commenced this lawsuit against Bell Media Inc. ("Bell"), as successor-in-interest to Chum Limited ("Chum"), and Bigfoot Entertainment, Inc. d/b/a Fashion Television International, Ltd. ("Bigfoot").[1]  Plaintiffs filed an amended complaint on January 21, 2015.  (ECF No. 13 ("FAC").)  FTV seeks to hold defendants liable for false advertising, tortious interference, and trade libel and seeks a declaratory judgment with regard to its right to use the mark "Fashion Television."

FTV's lawsuit followed its receipt earlier that month of a cease and desist letter authorized by a subsidiary of Bigfoot, Fashion Television International, Ltd. ("FTIL"), relating to FTV's use of certain marks in connection with programming

---

[1] Plaintiffs first named Bigfoot as a defendant in the First Amended Complaint.  (ECF No. 13.)

broadcasts. According to FTV, its right to use the marks was resolved by litigation between 1998 and 2002—the results of which are binding on Bigfoot and FTIL.

Before this Court are motions to dismiss by both Bell and Bigfoot. (ECF Nos. 24, 28, 55.) This Opinion deals only with the motion by Bell. (ECF No. 28.) Bell has moved pursuant to rules 12(b)(2) and (6) on the bases that the Court lacks personal jurisdiction and for failure to state a claim. Bell's motion is GRANTED.

I. FACTUAL BACKGROUND

FTV is a television network that has been broadcasting fashion-related content since 1997. (FAC at 1.) In 1998, shortly before FTV launched in the United States, it was sued by Chum—Bell's predecessor—for its use of the name "fashion television." Chum v. Lisowski et al., 98 Civ. 5060 (KMW), 2001 WL 243541, at *1 (S.D.N.Y. Mar. 12, 2001). Chum had used the Fashion Television mark in 1985 and commenced using it in the United States in 1992. Id. In that litigation, it was "undisputed that those of defendants' marks that use the word 'fashion' in conjunction with TV or television 'look [] similar' to the [Chum] marks." Id. at *2 (first alteration in original). The Court granted summary judgment dismissing Chum's trademark infringement and dilution claims but denied it as to a remaining unfair competition claim. Id. at *7. In connection with its determination on summary judgment, the Court found that the mark "fashion television" was generic. Id. at *8. Following a bench trial on that claim, judgment was entered in favor of FTV. Chum Ltd. v. Lisowski, 198 F. Supp. 2d 530, 542 (S.D.N.Y. 2002). No appeal was taken.

In 2006, defendant Bell acquired Chum. (FAC at 2.) In October 2014, Bell and Bigfoot entered into a letter of intent ("LOI") pursuant to which Bigfoot would license the worldwide rights to a series of trademarks. (Declaration of Kevin A. Assaff, ECF No. 30 (Assaff Decl.) ex. B.) Bell and Bigfoot entered into a long-form license agreement effective as of December 24, 2014. (Declaration of Raymond J. Dowd, ECF No. 56 ("Dowd Decl.") ex. I.) Pursuant to that agreement, in exchange for monetary payments totaling $4 million, Bigfoot acquired Bell's worldwide rights, excluding Canada, to a series of marks including "Fashion Television," and logos using that name. (Dowd Decl. ex. I ¶ 4.1 & sched. D at BELLMEDIA000032-35.) Bell agreed that it would, if requested and in its sole discretion, assist Bigfoot with respect to any enforcement steps. (Dowd Decl. ex. I at ¶ 6.6.2.) Bigfoot agreed to indemnify Bell for costs associated with such assistance. (See id. ¶ 6.6.2.3.)

### A.  Jurisdictional Facts as to Bell

Bell is a Canadian media corporation with primary operations in Toronto, Ontario. (Assaff Decl. ¶¶ 2, 22-25.) It broadcasts programming in Canada and obtains advertising dollars in connection with such broadcasts from both Canadian and U.S. advertisers. (See Assaff Decl. ¶¶ 7, 24.) It does not have real property, offices, bank accounts or other assets in New York. (Supplemental Declaration of Kevin A. Assaff, ECF No. 65 ("Supp. Assaff Decl.") ¶ 4.) It does not have any employees in New York. (Supp. Assaff Decl. ¶ 4.) It does not broadcast content or offer goods or services in New York. (Supp. Assaff Decl. ¶ 4.)

Bell's contacts with New York are limited to the following: it is the successor-in-interest to Chum; and Chum initiated litigation against FTV in New York in

1998. (ECF No. 64 ("Bell Reply Br.") at 5.) The securities of Bell's ultimate parent, BCE Corporation, are listed on the New York Stock Exchange. (Bell Reply Br. at 5.) Bell uses TeleRep LLC ("TeleRep"), an independent media sales agency that sells advertising time to U.S. advertisers for U.S. and Canadian media clients, which has offices in New York. (Bell Reply Br. at 5.)

Bell is the owner of certain trademarks registered in the U.S. and elsewhere, and among its U.S. registered marks are the "FT Fashion Television" logo. (See Assaff Decl. ¶¶ 16-18, Declaration of Elizabeth A. McNamara, ECF No. 31 ("McNamara Decl.") ¶ 13 & ex. 9.) The logo was registered in 2005 and became incontestable in 2010. (McNamara Decl. ¶¶ 13-14 & exs. 9-10.) This logo was not at issue in the Chum litigation. (See ECF No. 53 ("This use of a logo on a half-hour television episode is a different line of business from FTV's, which is broadcasting an entire 24-7 channel. . . . Chum applied for the trademark registration in May 1996 and it was granted in 2005 . . . . Accordingly, Chum's use of the logo was never inconsistent with FTV's rights." (citations omitted)).)

Bell licensed a variety of marks using the words "fashion television" or "Fashion TV" and associated logos to Bigfoot through two transactions: an initial assignment in the fall of 2014 and a final agreement in 2015. (Dowd Decl. ex. I sched. C; Assaff Decl. ex. F; Supp. Assaff Decl. ¶ 21.) One document bears a New York address for Bigfoot; and communications may have occurred between Bell in Canada and individuals representing Bigfoot in New York. (Dowd Decl. ex. I.) Invoices relating to the license agreement were sent to Bigfoot in New York. (Dowd

Decl. ex. K ("Assaff Tr.") ll. 152:1-10.) While the extent to which the negotiations relating to the license agreement occurred in New York is disputed, the Court finds based on the record before it that the bulk were not in this District.

Bell has two sources of revenue arguably generated in or through New York: one-off content licenses and the acquisition of advertising time on Bell's channels by U.S. companies that lack a Canadian presence. (Assaff Decl. ¶¶ 22-24.) These sources account for only a minute portion of Bell's revenues. (Assaff Decl. ¶ 22.)

TeleRep, which sells advertising time on behalf of Bell to U.S. companies, is a separate company from Bell. (See Assaff Tr. ll. 49:15-24; Dowd Decl. ex. N ("TeleRep Aff.") ¶¶ 1-3, 8 & ex. A.) TeleRep represents many U.S. media companies and broadcast stations and reached 90% of U.S. households, with total advertising sales in excess of $2.8 billion dollars annually across 12 U.S. offices. (TeleRep Aff. ¶ 3.) TeleRep promotes more Canadian companies' than just Bell; it accepts orders for Fashion TV as one of a group of properties, not by itself. (TeleRep Aff. ¶ 8.) TeleRep employs three salespeople in New York. (TeleRep Aff. ¶ 7.) None of TeleRep's New York employees is an employee of Bell. (Supp. Assaff Decl. ¶ 8; see also Assaff Tr. at 188:24-189:9.)

Bell licenses content from U.S. companies for broadcast in Canada. (Assaff Decl. ¶ 24; Supp. Assaff Decl. ¶¶ 4, 13.) Of Bell's most significant U.S. entertainment licensing arrangements, only two of those licensors are New York corporations: HBO and Comedy Central. (Supp. Assaff Decl. ¶ 16.) This is only a fraction of licensing fees paid by Bell to U.S. companies. (Supp. Assaff Decl. ¶ 16.)

II.     PERSONAL JURISDICTION OVER BELL

Plaintiff FTV bears the burden of demonstrating sufficient facts to justify a court's exercise of personal jurisdiction. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996). Where, as here, the parties have engaged in jurisdictional discovery, the Court may look outside of the pleadings to determine jurisdiction has been demonstrated by a preponderance of the evidence. See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013). Conclusory assertions are insufficient. See S. New England Tel. Co. v. Global NAPS Inc., 624 F.3d 123, 138 (2d Cir. 2010).

Here, FTV has alleged both general and specific jurisdiction. The Court looks first to the law of the forum state (here, New York). Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 168 (2d Cir. 2013). If the Court finds that the provisions of the New York statute—the Civil Practice Law and Rules ("CPLR")—have been met, the Court must then inquire into whether the exercise of personal jurisdiction comports with constitutional due process. Id.

   A.   Specific Jurisdiction
      1.   CPLR § 302(a).

CPLR § 302(a) governs the assertion of specific jurisdiction based on a non-domiciliary corporation's acts. N.Y. C.P.L.R. 302(a). It provides:

> a.   Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

6

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> 2. commits a tortious act within the state . . . ; or
>
> 3. commits a tortious act without the state causing injury to person or property within the state . . . if he
>
>> i. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>
>> ii. expects or should reasonably expect the act to have consequences in the state . . .

The key to an assertion of personal jurisdiction pursuant to this section is a nexus between the act which gives rise to jurisdiction and plaintiff's cause of action. Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 166-67 (2d Cir. 2010). Once that nexus has been established, even a single act of contact with New York may be sufficient. Id. at 170. To determine whether this jurisdictional test has been met, a court must should examine the totality of the defendant's contacts with the forum state. Id. at 164.

Plaintiffs allege that specific jurisdiction over Bell pursuant to CPLR 302(a)(1) may be premised on the negotiations relating to the license agreement, on the October 2014 agreement between Bell and Bigfoot, the December 2014 license agreement into which they entered, or an agency relationship between Bell and Bigfoot that is alleged to have resulted in Bigfoot's causing its counsel to send the

7

cease and desist letter that was sent to FTV.  Plaintiffs rely on the same conduct for their assertion of jurisdiction pursuant to CPLR 302(a)(3).  None of this conduct supports jurisdiction as to Bell.

The Court has reviewed the record relating to the negotiations of the license agreement.  There is no evidence that Bell spent any time in this District in meetings or negotiation sessions, nor is there any evidence that Bell executed the agreement in this District.  Whether <u>Bigfoot</u> has an office in this District is in no way determinative of Bell's presence here.  Similarly, even if Bigfoot had personnel in this District with whom Bell communicated (the facts as to which are contested), that is also in no way determinative.  The Court finds that Bell was not actively negotiating the license in this District.  The fact that invoices seeking payment pursuant to that agreement may have been sent to Bigfoot in this District is insufficient to support purposeful availment by Bell of New York as a forum.

The essential claim that underlies the remainder of each of plaintiff's jurisdictional arguments is that Bell and Bigfoot are acting in concert—that Bell is ultimately behind the cease and desist letters, or other efforts to assert rights over FTV to the "Fashion Television" mark.  The evidence developed to date does not support this assertion.  The evidence before the Court supports only that Bell and Bigfoot entered into an arms-length ($4 million) license agreement, pursuant to which Bigfoot obtained whatever rights Bell may have had to the "Fashion Television" marks and logos in all jurisdictions except Canada.  The evidence does not support an inference that Bell is in fact behind the cease and desist letters and

8

is using Bigfoot as its New York foil. All of plaintiffs' arguments in this regard are speculative.

The documentary and deposition evidence supports Bell's assertion that it is a Canadian company that licenses programming entirely unrelated to this litigation from certain U.S. (and New York) entities, sells advertising to its programming (that also has nothing to do with this lawsuit) through an agent based, inter alia, in New York. It is also the owner of a number of registered marks and has licensed certain marks to Bigfoot. None of this has any nexus to this case to support specific jurisdiction.

2.   Due process.

In addition to finding a statutory basis for jurisdiction, a court must determine "whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." Licci, 732 F.3d at 168. To determine whether the Court's exercise of jurisdiction over a foreign defendant comports with due process protections, the Court considers first whether "a defendant purposefully established minimum contacts within the forum State," and second "whether the assertion of personal jurisdiction would comport with fair play and substantial justice"—that is, whether it would be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (internal quotation marks omitted).

The Second Circuit has recited a five factor test for this "reasonableness" analysis: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the

9

plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." Chloe, 616 F.3d at 164-65 (citing Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., 480 U.S. 102, 113-14 (1987)).

Even if this Court were to determine that any of the above facts, or Chum's prior litigation with FTV—and the resulting judgment—satisfied CPLR § 302(a), it would nonetheless find that due process prevented the exercise of jurisdiction in these circumstances. The Second Circuit's factors are not met. The Chum litigation occurred over a decade ago—indeed, that action was commenced almost 18 years ago. That litigation was commenced by a predecessor entity to Bell and, while it is certainly the case that Bell is bound by the determination in that case, that is not the equivalent of requiring Bell to appear in this jurisdiction to the end of time in connection with any lawsuits relating to the Fashion Television mark or the FT Fashion Television logo. This is particularly so when all evidence supports that Bell has washed its hands of the marks through its license to Bigfoot. Bigfoot's rights are limited to those that Bell has—and Bigfoot cannot seek to enforce greater rights than those that Bell has. But that is a different legal and factual proposition from one which would require Bell itself to appear in this District every time a licensee chooses to try and enforce rights. FTV is fully entitled to use the Chum judgment as appropriate—but it must do so in this jurisdiction as against the licensee or assignee, not against Bell.

Thus, the record before this Court supports Bell's claim that, as a Canadian company which does not regularly do business in New York, litigating here would be burdensome.  In addition, there is no particular state interest in litigating a case here.  No showing has been made that principles of collateral estoppel could not be applied in another forum. While plaintiffs do have an interest in obtaining relief in this District—thus meeting the third factor—that alone is not enough.  Finally, interstate issues and social policies are not at issue in light of the residence of Bell and nature of the case.

B.  General Jurisdiction

Plaintiff's arguments with regard to general jurisdiction fare no better. General jurisdiction is broader than specific jurisdiction—it is the equivalent of a defendant being "at home" in a forum state.  Goodyear Dunlop Tire Operations, S.A. v. Brown, 131 S.Ct. 2846, 2851 (2011).  To support general jurisdiction, a defendant's contacts must be continuous and systematic.  Id.  It is also possible that a court could have general but not specific jurisdiction over a defendant (for instance, in a situation in which conduct occurred outside of the forum but the defendant is at home in the forum).  That, however is not the case here.  Here, the facts developed during discovery leave no doubt that Bell is a foreign, non-domiciliary corporation.  No facts support an inference—let alone a finding—that Bell is "at home" in New York.

In support of its assertion of general jurisdiction plaintiff argues that the efforts of Bell's advertising rep, TeleRep, and other licensing efforts (e.g., of HBO programming) are so frequent and continuous as to make it "at home" in New York.

11

That is incorrect.  While TeleRep is sells advertising time on behalf of Bell, it is not itself "Bell," is it not a subsidiary or even an affiliate of Bell.  Of course, in <u>Daimler AG v. Bauman</u> the Supreme Court stated that even in cases where a corporation has in-forum contacts that are in some sense continuous and systematic, jurisdiction may nevertheless well be unsupportable.  134 S. Ct. 746, 761 (2014).  If this case related to a claim arising from advertising time that TeleRep had sold, the analysis might be different (and it would also be an analysis under CPLR 302, not CPLR 301).  But it is not.

The same is true with regard to Bell's licensing of certain U.S.- and particularly New York-based programming content.  This case does not arise from or relate to such licensing.  The mere licensing of content is insufficient to support the type of continuous and systematic contacts that underlie general jurisdiction.  Even if it did, to assert such jurisdiction on such a basis would be so unusual as to offend due process.

III.   CONCLUSION

For the reasons set forth above, Bell's motion to dismiss is GRANTED.

The Clerk of Court is directed to close the motion at ECF No. 28.

SO ORDERED.

Dated:   New York, New York
         May 14, 2015

                                            _____
                                                KATHERINE B. FORREST
                                                United States District Judge